## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

| | | |
|---|---|---|
| CLINTON THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV623-001 |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Clinton Thompson seeks judicial review of the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB).

## I.    GOVERNING STANDARDS

In social security cases, courts

. . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation

---

[1] Martin O'Malley is now the Commissioner of Social Security and has been substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. The Clerk is **DIRECTED** to update the docket accordingly.

and brackets omitted).   "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

*see also Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019)

("Substantial evidence . . . is 'more than a mere scintilla.'  [Cit.]   It

means—and means only—'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" (citations omitted)).

Under the substantial evidence test, "findings of fact made by

administrative agencies . . . may be reversed . . . only when the record

compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative

findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant.  *Moore v.*

*Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i).  At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is

2

"severe." *Id.* § 404.1520(a)(4)(ii).  At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii).  If not, the ALJ must then determine at step four whether the claimant has the [residual functional capacity ("RFC")] to perform her past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

At steps four and five, the ALJ assesses the claimant's RFC and ability to return to her past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1520c, *as stated in Jones v. Soc. Sec. Admin.*, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022).  RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012).  "The ALJ makes the RFC determination based on all relevant medical and other evidence presented.  In relevant part, the RFC determination is used to decide whether the claimant can

3

adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II.   BACKGROUND

Thompson, born on January 26, 1979, was 38 years old when he applied for DIB in December 2017 and 40 years old on the date last insured. Tr. 191-194; 534, 546. He alleges a disability onset date of April 19, 2016. Tr. 476. He has a limited education and past relevant work as a heavy equipment operator, security guard, and welder. Tr. 227, 533-34. After a hearing, tr. 473-511, the ALJ found Thompson not disabled, tr. 15-33. The Appeals Council denied his request for review. Tr. 1-6. Thompson appealed the decision to this Court, and on the Commissioner's consent motion, the Court reversed the Commissioner's final decision and remanded the case for further agency proceedings. Tr. 580-82; *see also Thompson v. Kijakazi*, CV620-091, doc. 32 (S.D. Ga. Dec. 1, 2021). After a second administrative hearing, tr. 542-65, the ALJ again issued an unfavorable decision, tr. 512-41.

The ALJ found Thompson's lumbar spine disc herniations, status-post micro-discectomy, left hip degenerative joint disease, obesity,

depression, and anxiety to be severe impairments,[2] tr. 518, but determined they did not meet or medically equal a Listing, tr. 518-21. The ALJ then found that Thompson retained the RFC for sedentary work except:

> the claimant can push/pull up to 10 pounds occasionally. The claimant can stand/walk up to 2 hours of 8 hours and he can sit 6 hours of 8 hours with normal breaks. The claimant can occasionally stair and ramp climb, but not climb ladder or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally perform overhead reaching and occasionally perform use of foot controls. The claimant should avoid unprotected heights or hazards. The claimant should not have concentrated exposures to wetness and vibrations. The claimant's work should be limited to simple, routine work. That work should involve simple, work related decisions with few, if any workplace changes. The claimant may have occasional interaction with co-workers, supervision, and the public.

Tr. 521-33. Thompson, he determined, could not perform his past relevant work. Tr. 533-34. He could, however, perform jobs that existed in significant numbers in the national economy. Tr. 534-35. Therefore, he was found to be not disabled. Tr. 535.

Thompson filed the instant lawsuit seeking judicial review of the ALJ's decision. *See generally* doc. 1. The parties have submitted their briefs. *See* docs. 9, 12, & 13. The matter is ripe for disposition. *See* Rule

---

[2] The ALJ found Thompson's hypertension to be nonsevere. Tr. 518.

5, Supplemental Rules for Social Security Actions under 42 U.S.C.

§ 405(g) ("The action is presented for decision by the parties' briefs.").

## III.   ANALYSIS

Thompson argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to resolve apparent conflicts between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT), because the ALJ provided "legally insufficient reasons for rejecting the opinions of a treating psychologist," and because the ALJ "omitted a sit/stand option from his RFC assessment despite evidence that supports the need for it," and failed to account for Thompson's medication side effects.  Doc. 9 at 3.  The Commissioner responds that any error in the ALJ's consideration of the VE's testimony was harmless, doc. 12 at 6-13, that the ALJ properly considered the psychologist's opinion, *id.* at 13-20, and that substantial evidence supports the ALJ's RFC assessment, *id.* at 20-22.  Thompson replied in support of his arguments.  *See generally* doc. 13.

### A. The ALJ's Failure to Address an Apparent Conflict between the VE's Testimony and the DOT was Harmless Error

Thompson's RFC limits him to performing simple, routine work. Tr. 521.  During the October 24, 2019 hearing, the VE testified that a

hypothetical individual of Thompson's same age, education, work history, and RFC could perform three jobs: assembler, final parts assembler, and surveillance systems monitor.   Tr. 507-08.   The ALJ relied on this testimony in identifying the representative jobs of assembler, with 150,000 jobs in the national economy, final parts assembler, with 150,000 jobs in the national economy, and surveillance system monitor, with 101,000 jobs in the national economy, and concluding that "the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  Tr. 535.   Thompson argues that the VE's testimony is inconsistent with the DOT, because surveillance system monitor is an occupation with a reasoning level of three, which exceeds his limitations.   Doc. 9 at 8-9; *see also* DOT § 379.367-010, *Surveillance-System Monitor*, 1991 WL 673244 (4th Ed. 1991).  He argues the ALJ erred in not resolving this apparent conflict. Doc. 9 at 9.

The Eleventh Circuit explained in *Viverette v. Commissioner of Social Security*:

> The Dictionary of Occupational Titles, published by the Department of Labor, contains descriptions of thousands of jobs available in the national economy, and is used by the Commissioner of Social Security to adjudicate benefit

applications by claimants. *See* 20 C.F.R. § 416.966(d)(1). As relevant here, the DOT specifies the general educational requirements, including the level of reasoning skills, required for each job. *See Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 (M.D. Fla. 2006). Level 3 reasoning, according to the DOT, means the ability to "[a]pply commonsense understanding furnished in written, oral, or diagrammatical form [and to d]eal with problems involving several concrete variables in or from standardized situations." U.S. Dept. of Labor, Dictionary of Occupational Titles, App. C, § III, Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991).

13 F.4th 1309, 1311 (11th Cir. 2021). It then held that "there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning," and therefore "the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination." *Id.* at 1317. The ALJ has an affirmative obligation to identify and resolve "apparent conflicts" between the VE testimony and the DOT. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018); *see* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

In response to Thompson's challenge to the ALJ's step-five analysis, the Commissioner concedes "that the limitation in the RFC to simple, routine work would result in an 'apparent conflict' with respect to the surveillance system monitor occupation, which requires an individual to

8

have a reasoning level of 3." Doc. 12 at 7 (quoting *Viverette*, 13 F.4th at 1317). However, the Commissioner contends that the two remaining jobs identified by the ALJ, assembler and final parts assembler, have reasoning levels consistent with the mental functional limitations of Thompson's RFC, leaving 300,000 jobs in the national economy that he can perform, and therefore any error was, at most, harmless. *Id.* at 8.

In *Viverette*, the Eleventh Circuit found the ALJ erred at step five in listing "document preparer" as one of the representative jobs that the claimant could perform in the national economy, since it required level 3 reasoning but the claimant was limited to simple, routine, and repetitive tasks. 13 F.4th at 1309. The Court then acknowledged that "[t]he ALJ's failure to address the apparent conflict . . . is not the end of the matter." 13 F.4th at 1317. After determining the ALJ erred, it next considered whether the error was harmless, since the ALJ in that case also found that the claimant could work two other jobs, final assembler and check weigher. *Id.* The appellate court determined the error was not harmless, because the ALJ considered the three occupations cumulatively for purposes of making her determination that significant numbers existed in the national economy. *Id.* at 1318. Because it is the ALJ's job to

9

determine "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations," and "the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs," the appellate court instructed the district court to remand the case to the Commissioner for further proceedings. *Id.* at 1318-19. In particular, the Court focused on the ALJ's reliance on a total number of 125,000 jobs, "without considering an apparent conflict that affected 104,000 of those jobs." *Id.* at 1318. Therefore, "[g]iven that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy." *Id.*

The Commissioner here urges the Court to find a harmless error, distinguishing this case from *Viverette* and arguing "[t]he Eleventh Circuit in *Viverette* left the door open for reviewing courts to evaluate

whether the remaining jobs exist in significant numbers, such that the ALJ's error was harmless, in cases where the remaining jobs represent a larger percentage of the total jobs and constituted a relatively high number of jobs." Doc. 12 at 11.  Defendant argues that "Plaintiff's ability to perform the assembler and final parts assembler occupations means there are still 300,000 jobs in the national economy that he can perform, which is a significant number." *Id*. at 8.  Compared to the eighty percent reduction in *Viverette*, the reduction in positions caused by the ALJ's error here is approximately twenty-five percent.  *Id*. at 10-11.   The Commissioner contends the positions remaining are "*well above* this circuit's threshold for a significant number of jobs in the national economy." *Id*. at 11 (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).

In reply, Thompson points out that "after *Viverette* numerous courts in the Eleventh Circuit applied its holding and refused to decide whether the remaining jobs constituted a significant number when an apparent conflict eliminated one or two occupations." Doc. 13 at 1; *see also id*. at 2 n. 4-7 (citing *Rodriguez v. Kijakazi*, 2021 WL 6127795 (M.D. Fla. Nov. 2, 2021); *Roussin v. Kijakazi*, 2021 WL 6205948 (M.D. Fla Dec. 16, 2021);

*Grech v. Kijakazi*, 2022 WL 485111 (M.D. Fla. Feb. 17, 2022)).  However,

other courts within the Eleventh Circuit have distinguished *Viverette*, in

line with the Commissioner's request here, and found harmless error

where the number of positions under consideration, after excluding the

error-tainted job, are "remarkably higher than the 'relatively low

number' of positions in *Viverette* . . . ."  *Hay v. Kijakazi*, 2023 WL 8719154,

at * 11 (S.D. Fla. Dec. 17, 2023); *see also id.* at *11 n. 8 (collecting cases).

The Court is persuaded by the Commissioner's argument, and by

district courts considering a similar argument, that the Eleventh Circuit

has "left the door open" for this Court to evaluate whether the remaining

jobs exist in significant numbers, such that the ALJ's error was harmless.

*See* doc. 12 at 11; *see also Hay*, 2023 WL 8719154, at *10 ("*Viverette* does

not preclude this Court from determining that housekeeper job—the

remaining job after exclusion of the other two jobs with alleged apparent

conflicts—exits in significant numbers in the national economy *if it is*

*abundantly clear that it does*.  Rather, in *Viverette*, the Eleventh Circuit

stated that it could not conclude the ALJ's failure to address the apparent

conflict "on the record' in the case was harmless." (internal alterations

omitted)).  As the Eleventh Circuit itself stated in *Viverette*, finding an apparent conflict is "not the end of the matter."  13 F.4th at 1317.

Even without considering the surveillance system monitor job, the ALJ found that the claimant could perform the assembler and final parts assembler jobs, and the VE testified that there are, collectively, 300,000 of these jobs available in the national economy.  Tr. 534-35.  Plaintiff has not argued that there is any apparent conflict between the VE's testimony and the DOT relative to these two jobs.  *See generally* docs. 9 & 13.  Plaintiff does not dispute the ALJ's finding, relying on the VE's testimony, that there are 300,000 of these jobs available in the national economy.  *Id.*  As the Southern District of Florida explained in *Hay*, "the Eleventh Circuit and other circuit courts that have considered whether a certain number of positions have satisfied the significant-numbers threshold have found that numbers far below the [300,000] available here have satisfied that threshold."  2023 WL 8719154, at *10 (citing *Allen*, 816 F.2d at 602 (80,000 positions); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (78,000 positions); *Milhem v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (89,000 positions); *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (25,000 positions)).  The

ALJ's error was, therefore, harmless, because his determination that Thompson is "capable of making a successful adjustment to other work that existed in significant numbers in the national economy" remains supported by substantial evidence, even when excluding 101,000 of the jobs he initially relied upon. *See, e.g., Hay*, 2023 WL 8719154, at * 11 (harmless error where 221,000 jobs remained under consideration after excluding error-tainted job); *Rodriguez v. Comm'r Soc. Sec. Admin.*, 2022 WL 4364506, at *5 (M.D. Fla. Sept. 21, 2022) (finding harmless error because remaining jobs with 220,000 available positions was substantial evidence to support the ALJ's decision); *Mesa v. Kijakazi*, 2022 WL 4369733, at *14 (S.D. Fla. May 11, 2022) (finding harmless error after excluding 13,000 of 319,800 available jobs); *Denmark v. Kijakazi*, 2022 WL 831903, at *7-*8 (M.D. Fla. Mar. 21, 2022) ("Even without the shipping and receiving weigher positions . . . there are about 551,000 jobs in the national economy that Plaintiff could perform, which this Court finds is substantial evidence to support the ALJ's step five determination.").

**B. The ALJ Appropriately Weighed Dr. Hertza's Opinion**

Plaintiff next argues the ALJ provided "legally insufficient reasons for finding the opinion of Jeremy B. Hertza, PsyD, only partially persuasive," and therefore the ALJ's decision is not supported by substantial evidence. Doc. 9 at 12. For claims filed after March 27, 2017, as here, the ALJ will not defer or give any specific weight to medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896-98 (11th Cir. 2022) (affirming the new regulations that eliminate the treating physician rule for claims filed after March 27, 2017). Under the applicable regulation, to determine the persuasiveness of a medical opinion or prior administrative finding in the record, the ALJ focuses on factors that include supportability, consistency, the medical source's relationship with the claimant, and the medical source's specialization. 20 C.F.R. § 404.1520c(c). The new regulations differentiate between a "medical opinion," defined as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) . . . ," 20 C.F.R. §§ 404.1513(a)(2) (defining "medical opinion"); 416.913(a)(2) (same), and "other medical evidence," which includes "judgments about

15

the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis," 20 C.F.R. §§ 404.1513(a)(3) (defining "other medical evidence"); 416.913(a)(3) (same).

The Eleventh Circuit has summarized the effect of the 2017 amendments to the SSA's regulations. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).

> This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. Under the new regulations an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. [20 C.F.R.] § 404.1520c(c)(1)-(5).

> The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical

opinion(s) or prior administrative medical finding(s) will be."
*Id.* § 404.1520c(c)(2).

*Id.* As for the two most important factors, "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

Dr. Hertza completed a Medical Assessment of Ability to Do Work-Related Activities, and opined that while Thompson had a good ability to follow work rules, use judgment, and maintain his personal appearance, and a fair ability to relate to co-workers, interact with supervisors, understand, remember and carry out complex job instructions, understand, remember and carry out simple job instructions, behave in an emotionally stable manner, and demonstrate reliability, he had poor or no ability to deal with the public, deal with work stresses, function independently, maintain attention or concentration, understand, remember and carry out detailed, but not complex, job instructions, and relate predictably in social situations. Tr. 424-25. The ALJ considered Dr. Hertza's opinions and found them to be partially persuasive, "with

17

many aspects of his opinion not supported and not consistent with other medical findings or opinions." Tr. 532. Specifically, the ALJ found Dr. Hertza's opinions supporting moderate functional limitations to be supported by Dr. Hertza's exam and consistent with the claimant's treatment records. *Id.* However, the ALJ found Dr. Hertza's opinions of more significant limitations not fully supported by Dr. Hertza's own objective observations during two separate exams and not consistent with medical findings of the state agency consultants and the medial opinions of another physician. *Id.*

Related to Dr. Hertza's opinion of Thompson's "poor to no ability" in the areas of interacting with others and concentrating, persisting, or maintaining pace, the ALJ pointed to the lack of support for this opinion in Dr. Hertza's "own objective observations" that the claimant was alert, oriented, maintained good eye contact, had a full range of affect that appeared normal, and was fully engaged in the conversation and asked appropriate questions, was pleasant and well groomed, and had normal thought content and logical thought processes. Tr. 532. He also highlighted reports from Dr. Hertza's medical records that the claimant had no prior mental health treatment at the March 2019 presurgical

consultation and only one visit after that consult in October 2019. *Id.* The ALJ also found the opinion not supported by the claimant's conservative treatment and normal mental status findings at other examinations. *Id.* He also determined the opinion to be "not fully supported by Dr. Whitley's exams that noted some deficits in these areas, but also documented intact insight, intact judgment, adequate impulse control, good effort, the ability to perform serial number recitation and spell 'world' backwards, normal thought content and production, normal speech and communication, and some establishment of rapport." *Id.*

Plaintiff does not dispute that the ALJ conducted this analysis of Dr. Hertza's opinions but argues the analysis is not supported by substantial evidence. Doc. 9 at 16-22. However, the ALJ thoroughly discussed Dr. Hertza's opinions and compared them to Dr. Hertza's own objective findings and the other medical evidence available in the record. Tr. 532; *see also* tr. 527-28. It would be improper for this Court to reweigh the evidence or substitute its judgment for the ALJ's judgment. *Mitchell*, 771 F.3d at 782. Indeed, even if the other evidence in the record cited by Plaintiff could support a contrary conclusion, it would not compel a reversal of the ALJ's determination. *Adefemi*, 386 F.3d at 1027; *cf. Sims*

*v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion."). The ALJ's analysis of Dr. Hertza's opinions is supported by substantial evidence.

Plaintiff suggests that the ALJ erred by not accounting for the effect of stress in the workplace in the RFC assessment. Doc. 9 at 22. The ALJ, after acknowledging Thompson's "moderate functional limitations in understanding, remembering or applying information; interacting with others; and in concentrating, persisting, or maintaining pace," limited him to "simple, routine work that involves simple, work related decisions with few, if any, workplace changes and only occasional interaction with co-workers, supervision, and the public." Tr. 527-28. The ALJ did what was required, after appropriately weighing the evidence, and remand is not warranted.

## C. The ALJ's Assessment of Thompson's RFC is Supported by Substantial Evidence

Plaintiff's final argument is that the ALJ's RFC assessment is "unexplained and incomplete" and therefore cannot support a disability

determination.  Doc. 9 at 23.  He points to record evidence that supports his contention that sitting causes him increased back pain, and that his treating specialist, Dr. Baker, found a sit/stand option appropriate.  *Id.* He also points to record evidence that he takes narcotics for pain and they cause drowsiness.  *Id.* at 24.  He argues the ALJ's failure to include a sit/stand limitation and a limitation to account for the side effect of his medication in his RFC is reversable error.  *Id.*

As discussed above, at step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238 (citation omitted), *superseded on other grounds by* 20 C.F.R. § 404.1520c. Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (citations omitted).

In formulating Thompson's RFC, the ALJ considered, and discounted, Plaintiff's subjective complaints, including those about his back pain and the resulting limitations on his ability to sit and stand and his drowsiness.   Tr. 522, 528.   When a claimant provides testimony concerning his subjective symptoms, the ALJ must determine whether there exists "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   "If the record shows the claimant has a medically determinable impairment that could reasonably be expected to produce [his] symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work" in light of the objective medical evidence and statements by the claimant and her doctors.   *See Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 786 (11th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)(1)-(2)).   "If the ALJ discredits subjective testimony, he must

articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

The ALJ followed this rubric when analyzing Plaintiff's subjective complaints of back pain. *See* tr. 521-26. He acknowledged Thompson's testimony that "he is in constant pain and that he cannot . . . stand or sit for extended periods of time." Tr. 522. He also considered Thompson's testimony that he lumbar spine impairment with radiating pain was his most limiting impairment, and that he can only sit 15-30 minutes and stand for 30 minutes due to his constant back pain. *Id.* However, he found that Thompson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* To support that determination, the ALJ then discussed, in detail, the medical evidence and highlighted exams where Thompson reported worsening back pain yet demonstrated an ability to stand during the exams, did not have difficulty ambulating, no documented gait deficits, and no use of an assistive device. Tr. 522-25; *see also* tr. 528.

The ALJ also considered, and discounted, Thompson's complaints of drowsiness caused by his medication. Tr. 528. He pointed to

consultative examinations that demonstrated no deficits in alertness or fatigue, longitudinal exams that showed alertness, plus records showing adjustments to medication to account for his symptoms "with no post-adjustment complaints of sleepiness, suggesting that this mediation change resolved his symptoms." *Id.* The ALJ also specifically accounted for any remaining effects of Thompson's pain medications by reducing him to a sedentary exertion RFC. *Id.* The ALJ's weighing of Thompson's subjective testimony is supported by substantial evidence.

Plaintiff also points to a Physical Capacities Evaluation completed by his treating specialist, Dr. Baker, that indicates a sit/stand option is necessary. Doc. 9 at 23 (citing tr. 792). The ALJ considered Dr. Baker's opinion and, following the regulatory framework discussed above, found it not persuasive. Tr. 530-31. Plaintiff does not challenge the ALJ's consideration of Dr. Baker's opinion, or even address it at all. Doc. 9 at 23. The ALJ provided sufficient reasons to support his determination that it was not persuasive, including a lack of supportability and consistency. Tr. 530-31. His determination is supported by substantial evidence. The ALJ's thorough and reasoned opinion supports his formulation of Thompson's RFC.

## IV.  CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 15th day of February, 2024.

_____
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia

26